## Janowicz *v.* Crucible Steel Company of America, Appellant.

Argued October 8, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

rear-gument refused February 17, 1969.

*James F. Manley,* with him *Louis R. Dadowski,* and *Burns, Manley & Little,* for appellant.

*Allen H. Cohen,* with him *Gatz, Cohen & O'Brien,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, January 15, 1969:

Appellee, Paul Janowicz, was a painter employed by Johnson Brothers Company, an industrial painting contractor. Johnson Brothers had contracted with Crucible Steel Company for the painting of that Company's 2300-foot long railroad-type trestle located at Crucible's plant in Midland, Pennsylvania.

Janowicz was required to work on scaffolding suspended in air and supported by cables which had been strung horizontally on each side of the trestle. On June 17, 1962, one of the steel cables was severed by its contact with an electric wire which ran vertically down one of the steel leg supports of the trestle for the purpose of supplying light to a shed. Janowicz was hurled to the ground and sustained serious personal injuries. He instituted suit against Crucible and after trial, the jury returned a verdict in his favor and against Crucible.

Crucible's motions for judgment n.o.v. and for new trial were refused and judgment was entered on the verdict. This appeal followed.

Crucible argues that the evidence was insufficient to support a finding of negligence on its part. It reasons that the scaffolding was erected by Johnson and that its, Crucible's, inspectors had viewed the scene prior to the accident and found that the cable in question had been tied back to prevent its coming in contact with the electric line. It contends that it had no reason to believe that the tie-back arrangement would change and no reason to guard against such a change. Furthermore, Crucible submits, the removal of the tie-

back was the operative fact which permitted the contact between the cable and the wire and there was no evidence of who or what caused the removal or when it occurred. This argument of Crucible, however, is based on the erroneous assumption that Crucible is only guilty of negligence if it knew or should have known that the cable had become untied or was permitted to come into contact with the wire and failed to do something about it. This assumption, however, begs the real question: What was required of Crucible in the performance of its admitted duty to appellee as a business invitee? The duty owed to appellee as a business invitee was to exercise reasonable care to make its premises safe for him or to give him adequate warning of any dangers known to it and unknown to him. *Mathis v. Lukens Steel Company*, 415 Pa. 262, 203 A. 2d 482 (1964).

The undisputed evidence was that the cable could not have been severed by the wire if Crucible had taken any one of the basic precautions such as fusing, metal conduit, relocating the wire to the inside (instead of the outside) of the steel leg, or having the wire temporarily disconnected during the painting job. Crucible's chief safety supervisor admitted that its installation and maintenance of the wire in question did not meet the safety requirements established by both industrial practice and by the National Electrical Code, by which Code Crucible admittedly governed its operations. The Code required the wire to be fused separately and placed in a metal conduit for protection. Instead the wire in question had a fabric insulation. Crucible's electrical foreman admitted that the purpose of the metal conduit was to protect the wire from having its insulation worn off by rubbing and that if a metal conduit had been used on the wire in question, the accident would not have happened. Crucible's elec-

trical expert testified to the same effect, to wit: that the metal conduit would have positively prohibited the electricity from arcing to the cable. The wire in question had been tapped in by Crucible to the main electrically operated trestle which was controlled by a 1600 ampere circuit breaker. Appellee's electrical expert testified that the National Electric Code which appellant admittedly followed required the wire not only to be fused separately but to be protected by a maximum fusing of 50 amperes. He testified that if there had been a 50 ampere or less fuse protection for this wire the steel cable could not have been severed when it came into contact with the bare part of the wire since when the electrical arc or fault developed, the 50 ampere fuse would have blown and thus the electrical current running into the wire would have been shut off. Because there was no fuse protection for the wire and it was tied into the main high line system controlled by the 1600 ampere circuit breaker for the entire circuit, the huge amount of electrical current flowed at the spot where the bare wire and steel cable came into contact with each other. There was no refutation of such facts from Crucible's chief safety supervisor and safety inspector; on the contrary, as indicated above they admitted that the precautions of the National Electric Code which they used to govern their operations were not followed with respect to the wire in question.

Nor did Crucible give any warning to Johnson Company at the time it was erecting the cables that the ordinary looking house wire, insulated with only a common fabric insulation, was tapped into the main line system in the manner outlined. As more fully discussed relative to the question of appellee's contributory negligence, the presence of the electric wire itself would not indicate the danger that lay therein. There-

fore, not having given notice to Johnson of the dangerous condition and the wire itself not being sufficient to give rise to notice of such dangerous condition, Crucible cannot rely, as it seeks to do, on our holding in the case of *Grace v. Henry Disston & Sons, Inc.*, 369 Pa. 265, 85 A. 2d 118 (1952), to the effect that it is sufficient if the independent contractor hiring the injured employee has notice of the dangerous condition on the premises.

It is our conclusion, therefore, that the trial judge properly left it to the determination of the jury whether Crucible had performed its duty to appellee by seeing that Johnson had tied back the cable away from the wire in question. The trial judge charged: "The defendant brought in witnesses, I think, from the Johnson Brothers Painters who said that they were supplied with what they call, I think, a tieback or a tie-in, which is a piece of rope to hold that wire back from touching the cable. That is another thing that the plaintiff claims here, that that was not sufficient. It is up to you, members of the jury, to determine, under the testimony, whether there was negligence, whether the plaintiff was furnished a reasonably safe place in which to work. . . . Was there due care given under these circumstances? Did the defendant do all he should have done or done what a reasonable person would have done to protect people who were there and had to work in that particular place? . . . If you decide that Crucible Steel Company did everything they should have done to provide a safe place for this man to work, if you find that, you find a verdict for the defendant, if you find that they did do all they reasonably should have done and that there was no negligence on their part, as I have defined negligence to you—'lack of due care under the circumstances' is what I said, and that is the reason I have gone into a little detail in explain-

ing what some of those circumstances were, but that is for you to determine. . . ." In so charging, the trial judge accorded Crucible all it was entitled to under the law: the right to have the jury pass upon the reasonableness of its conduct under all the circumstances.

The fact that the tie-back was removed without any explanation as to when or by whom cannot be considered as an intervening cause insulating Crucible from liability since the very question before the jury was whether the mere placing of the tie-backs was a sufficient precaution; a finding that it was not a sufficient precaution necessarily includes a finding that the removal of the tie-backs, regardless of by whom or how, was a foreseeable circumstance against which Crucible should have guarded.

As to appellee's contributory negligence, Crucible argues that if it was bound to know that the cable and wire would come into contact with each other, appellee was bound to know the same and that he should have checked to see whether the cable supporting him was safe. Appellee, however, was entitled to assume that Crucible had performed its affirmative duty to keep the premises in a reasonably safe condition or to warn of dangers thereon which Crucible knew or should have known existed. The presence of the ordinary looking electric wire leading to a light bulb in the shed was not sufficient to put plaintiff on notice of the high current contained therein: *Stark v. Lehigh Foundries, Inc.*, 388 Pa. 1, 130 A. 2d 123 (1957). As we said in that case: " 'Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case.' " We there concluded that though plaintiff

had seen the high voltage lines prior to the accident, he had the right " 'to assume that Lehigh had performed its affirmative duty to keep the premises in a reasonably safe condition or warn of dangers thereon which Lehigh knew or should have known existed. Since the danger was not patently obvious plaintiff was not required to make an independent survey to determine whether Lehigh had in fact performed its duty: [citing cases].' " Under the facts, the trial judge properly concluded that the question of contributory negligence of appellee was not in the case and therefore was not to be presented to the jury, there being no evidence to sustain a finding of such contributory negligence.

Our review of the record fails to reveal any error of the trial court entitling Crucible to a new trial, and the evidence being more than sufficient to sustain a finding of negligence on the part of Crucible which was the proximate cause of appellee's injuries, the jury's verdict must stand.

Judgment affirmed.

Mr. Justice JONES concurs in the result.

Mr. Justice MUSMANNO did not participate in the decision of this case.