407 A.2d 42

Adele LITWINKO

v.

James GRAY, Southeastern Pennsylvania Transportation Authority, William Sommers, and the City of Philadelphia.

Appeal of SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY.

Superior Court of Pennsylvania.

Argued June 19, 1978.

Decided July 13, 1979.

---

1. The law aids those who are vigilant, not those who sleep upon their rights.

J. Shane Creamer, Philadelphia, for appellant.

No brief filed for appellee Gray.

No brief filed for appellee Litwinko.

Barbara Axelrod, Assistant City Solicitor, Philadelphia, for appellee City of Philadelphia.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

The instant appeal is from an order of the court below granting a directed verdict and point for binding instructions on behalf of appellee, the City of Philadelphia, and denying the motion of appellant Southeastern Pennsylvania Transportation Authority (SEPTA) for a new trial. For the reasons stated herein, we reverse the order of the court below.

The facts giving rise to this appeal are as follows. On October 8, 1969, at or about 6:40 a. m., plaintiff was a passenger on a "Route 36" streetcar operated by defendant, Sommers, an employee of SEPTA. The streetcar was traveling along Island Road in the City of Philadelphia. At the

intersection of Island Road, 74th Street, and Buist Avenue, it stopped and Sommers opened the door to permit the passengers to exit. Upon alighting, plaintiff and a second passenger were immediately struck by the left front fender of a motor vehicle operated by the defendant, James Gray. The Gray vehicle had also been travelling on Island Road in the same direction as the streetcar. At the time of the accident, the green light at the intersection was in favor of Gray and the streetcar. At trial, SEPTA conceded that the intersection at which the streetcar stopped was dangerous, due, *inter alia*, to the heavy volume of traffic, to the fact that cars "hot rodded" on Island Road, and because, at the time of the accident, passengers alighting from the streetcar had to cross three lanes of traffic to get to safety. Since the accident, the city has erected a special "safety island" at which passengers are now discharged.

After presentation of the evidence, the court below granted the City of Philadelphia's motion for a directed verdict and point for binding instruction. The jury subsequently found SEPTA and Gray to be liable in the amount of $70,000; the driver of the streetcar, Sommers, was found not to be liable. SEPTA appeals from the order of the court and alleges that the jury should have been permitted to determine whether the City of Philadelphia was liable for designating the dangerous intersection as a streetcar stop. The evidence on this issue was as follows.

The traffic code of Philadelphia provides in pertinent part:

"Chapter 12–113, Steetcar Stops.

(1) The Department shall designate street stops.

(2) Operators of streetcars shall stop such streetcars only at designated streetcar stops except in case of emergency."

The "Department" referred to in the ordinance is the Streets Department of the City of Philadelphia. John Boorse, the head of the Investigation Section of the Traffic Engineering Division of the Streets Department testified to the manner in which streetcar stops are selected. He stated

that SEPTA submits the proposed stops to his division and unless he objects to any of the stops as unsatisfactory or unsafe, they become designated stops. The city also erects traffic safety islands if they are deemed necessary.

Various employees of SEPTA testified that once a stop is approved, SEPTA erects a sign indicating that it is a designated stop intersection. The signs are, however, not necessarily erected immediately at the intersection. Instead, they are erected on whatever utility pole is nearest to the intersection. In certain instances, the sign may be as much as one hundred and fifty (150) feet from the intersection, and the sign is intended merely to inform passengers that the stop is at the nearest intersection. No matter where the sign is located, drivers are instructed to stop the streetcar at the intersection just past the "building line" so that they have an unobstructed view of the entire intersection.

Although not clearly presented, it appears that the sign at the intersection in question is approximately one streetcar length (*i. e.* 45 feet) from the intersection. Testimony established that on the morning of October 8, 1969, the driver, Sommers, stopped the streetcar beyond the "building line" at the intersection, although how much beyond was not established. After review of the above evidence, the court below ruled that "[n]ot a scintilla of evidence was elicited at trial from which a jury could infer any negligence on the part of the City of Philadelphia." (Opinion at 3). Appellant disagrees and appeals from the lower court's entry of a directed verdict. In this respect, we agree with appellant.

A directed verdict is properly entered only if reasonable men cannot draw different conclusions from the evidence presented. *See, e. g., Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292 (3d Cir. 1961) (applying Pennsylvania law); *Cox v. Equitable Gas Co.*, 227 Pa.Super. 153, 324 A.2d 516 (1974). The party opposing the motion is entitled to the benefit of every fact and inference that can reasonably be deduced from the evidence in determining whether the case should be submitted to the jury. *See, e. g., Lescznski v. Pittsburgh Railways Co.*, 409 Pa. 102, 185 A.2d 538 (1962);

*Evans v. Golfine Truck Rental Service Co., Inc.,* 241 Pa.Super. 329, 361 A.2d 643 (1976), *allocatur refused,* 241 Pa.Super. xxxv. Finally, on an appeal from the entry of a directed verdict, the evidence and all reasonable inferences are considered in the light most favorable to the appellant. *See, e. g., Bahoric v. St. Lawrence Croation, No. 13 of Steelton,* 426 Pa. 90, 230 A.2d 725 (1967); *Adams v. J. C. Penney Co.,* 411 Pa. 653, 192 A.2d 218 (1963).

■ Applying the above principles, we must conclude that the lower court erred in directing a verdict on behalf of the City of Philadelphia. Plaintiff below asserted as one theory of liability that SEPTA and the City of Philadelphia were negligent in maintaining an intersection that was inherently dangerous. *Cf. Noon v. Knavel,* 234 Pa.Super. 198, 339 A.2d 545 (1975), *allocatur refused,* 235 Pa.Super. xxix (telephone company liable for negligently placing phone booth in hazardous spot where struck by automobile). SEPTA's theory was that the city was wholly or partially responsible for selecting the intersection as a streetcar stop. The city ordinance invested the city with ultimate responsibility for selecting streetcar stops, although in actual practice the city "rubber stamped" the stops selected by SEPTA. However, in a few instances the Streets Department of Philadelphia disapproved the suggested stops and recommended different ones. Moreover, the city was responsible for erecting safety islands to facilitate the passengers' disembarkation at dangerous intersections. Therefore, the evidence was not so conclusive that the court below could enter a directed verdict on behalf of the city.

■ In its opinion, the court below stated that, even assuming the city's participation in the selection of a dangerous stop, the failure by SEPTA to stop at the designated streetcar sign served to break any chain of causation between the alleged negligence of the city and the injuries to the plaintiff. The testimony of both the SEPTA and city employees belies this conclusion. The sign indicating the streetcar stop was intended to inform passengers that the stop was at the next intersection and not at the sign itself.

The testimony of the city's employee, John Boorse, was that the stop approved by his department was at the intersection of Island Road, 74th Street and Buist Avenue. Moreover, a passenger who had been riding the Route 36 streetcar for seven months and a driver who had been driving the route for several years testified that the streetcar always stopped at the intersection in question and never at the sign. Therefore, we believe the jury should have determined where the actual stop was to occur, and whether the failure by SEPTA to stop at the streetcar sign was a superseding act relieving the city from any liability. For the same reason, we reject appellee's claim that because the streetcar driver, Sommers, stopped past the "building line" on this particular morning, this would relieve it from any liability. Again, the effect of this act upon any possible negligence by the city was for the jury to consider. Because the jury imposed no liability upon Sommers, it may have concluded that his action was of no consequence in causing the accident.

Finally, the court below urged that because liability was imposed upon SEPTA but not Sommers, the jury probably concluded that SEPTA had been negligent in giving inconsistent instructions to its drivers as to where to stop. However, we may also speculate that the jury imposed liability upon SEPTA but not Sommers under a theory that SEPTA had selected a dangerous intersection at which to deposit its passengers. As stated, the jury should have been permitted to determine whether, under this theory, the city shared all or part of the responsibility.

Accordingly, the judgment entered on the directed verdict in favor of the City of Philadelphia is reversed. A new trial is granted limited solely to the liability of the City of Philadelphia as to Adele Litwinko and as to its joint responsibility with appellant should its liability be established. The damage determination of $70,000.00 is final, as is the liability of appellant and James Gray. Costs of the new trial herein ordered shall follow the outcome of the issue between appellant and appellee.

HESTER, J., files a dissenting statement.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

HESTER, Judge, dissenting:

I respectfully dissent. I would affirm on the opinion of Judge Doty of the court below.