481 A.2d 616

**Angelo COLLOI and Caterina Colloi, His Wife, Appellants,**

**v.**

**PHILADELPHIA ELECTRIC COMPANY and
Joseph Scholl, Inc.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1984.

Filed July 13, 1984.

Reargument Denied Sept. 26, 1984.

Petition for Allowance of Appeal Denied Feb. 11, 1985.

288

Lawrence Singer, Philadelphia, for appellants.

Charles W. Craven, Philadelphia, for Philadelphia Elec. Co., appellee.

John J. O'Brien, Philadelphia, for appellee Joseph Scholl.

Before CAVANAUGH, CIRILLO and WATKINS, JJ.

CIRILLO, Judge:

In this personal injury action, appellants Angelo Colloi and his wife Caterina Colloi appeal from a judgment entered in the Philadelphia County Court of Common Pleas after the court directed a verdict in favor of defendants/appellees Philadelphia Electric Company (PECO) and Joseph Scholl, Inc. (Scholl). We affirm the judgment with respect to Scholl, but reverse and remand for a new trial with respect to PECO.

The incident leading to this lawsuit occurred on September 11, 1978. On that date PECO, pursuant to a running contract for plumbing work with Scholl, called upon Scholl to repair an underground leak in the water sprinkler system at PECO's substation at Ninth and Lombard Streets in Philadelphia. Scholl, in turn, called upon a subcontractor, Herald Contractors, to perform the excavation work and repair the leak. Herald dispatched a foreman, George Kull, and a laborer, appellant Angelo Colloi, to the substation to do the work. Kull and Colloi were met on location by Charles McDevitt, a PECO employee, and Edward Koerper, vice president of Scholl, Inc. Kull, Koerper, and McDevitt reviewed blueprints of the substation water lines, and then McDevitt showed the others where the water leak was inside one of the buildings comprising the substation. They then proceeded outside, and Koerper marked a spot on the sidewalk in front of the building where the excavation was to begin.

Colloi began breaking up the sidewalk with a jackhammer at the spot indicated. Koerper and McDevitt left the site of the excavation, but returned at various times to watch the progress of the work. Approximately five feet below the surface of the sidewalk, Colloi found a broken water pipe partly "saddled" in a concrete structure. In order to repair the pipe, the workmen had to slip a metal clamp around it at the leak. Kull instructed Colloi to break up the concrete so that the clamp could be applied. Colloi broke through the concrete with a jackhammer, whereupon he struck an electrical conduit carrying a current of 13,200 volts. The resulting shock caused Colloi to suffer severe injuries, includ-

ing second-degree burns over one-third of his body and impotence, with concomitant traumatic neurosis.

Colloi, joined by his wife, sued the Philadelphia Electric Company for his injuries, and PECO brought in Scholl as an additional defendant. The case went to trial by jury. After the plaintiffs had presented their case, PECO introduced into evidence the contract between itself and Scholl, and with that the defendants rested and moved for a directed verdict. The court granted the motion, and it is from an en banc court's refusal to disturb the directed verdict that the Collois appeal.[1]

> In an appeal from a directed verdict, the Appellate Court must consider the evidence and all reasonable inferences in the light most favorable to the appellant. *Litwinko v. Gray*, 267 Pa.Super. 541, 407 A.2d 42 (1979). If a jury could have reasonably concluded on the basis of that evidence and those inferences that liability should rest with the appellee, then the decision to direct a verdict was in error. *See Cox v. Equitable Gas Co.*, 227 Pa. Super. 153, 324 A.2d 516 (1974). If there is any room for doubt, the trial court should not direct a verdict. *Stephens v. Carrara*, 265 Pa. Super. 102, 401 A.2d 821 (1979).

*Lattanze v. Silverstrini*, 302 Pa. Super. 217, 220, 448 A.2d 605, 606 (1982).

Bearing these principles in mind, we turn to appellants' contentions that the evidence was sufficient to go to the jury on several theories of liability. We first address appellants' case against appellee PECO.

In holding PECO non-liable as a matter of law, the trial court relied on the undisputed fact that Colloi's employer, Herald Contractors, stood in the relationship of independent contractor to PECO. The court applied the following rule pertaining to independent contractors:

---

1. Appellants contend at the outset that it was procedurally improper for the court to direct a verdict for the defendants after denying the defendants' motions for compulsory nonsuit. This contention holds no water. *See Smith v. Ehler*, 366 Pa. 111, 76 A.2d 865 (1950).

An independent contractor is in possession of the necessary area occupied by the work contemplated under the contract and his responsibility replaces that of the owner who is, during the performance of the work by the contractor, out of possession and without control over the work or the premises....

... [W]hen he turns the work over to an independent contractor with experience and know-how, who selects his own equipment and employees, the possessor of land has no further liability in connection with the work to be done.

*Brletich v. United States Steel Corp.*, 445 Pa. 525, 531–32, 285 A.2d 133, 136 (1971). Rationale for the independent contractor doctrine was stated in *Silveus v. Grossman*, 307 Pa. 272, 278, 161 A. 362, 364 (1932):

The very phrase "independent contractor" implies that the contractor is independent in the manner of doing the work contracted for. How can the other party control the contractor who is engaged to do the work and who presumably knows more about doing it than the man who by contract authorized him to do it? Responsibility goes with authority.

However, appellant contends that notwithstanding the independent contractor doctrine, PECO had a duty in this case to warn the independent contractor and its employees of the existence and location of its underground high-tension power line.

 A landowner owes a duty to warn an unknowing independent contractor of existing dangerous conditions on the landowner's premises where such conditions are known or discoverable to the owner. *Grace v. Henry Disston & Sons, Inc.*, 369 Pa. 265, 85 A.2d 118 (1952); Restatement (Second) of Torts § 343 (1965); *see also Skalos v. Higgins*, 303 Pa. Super. 107, 449 A.2d 601 (1982). Such a duty to warn is owed irrespective of whether the independent contractor exercises full control over the work and premises entrusted to him. *Crane v. I.T.E. Circuit Breaker Co.*, 443 Pa. 442, 278 A.2d 362 (1971). However, "An owner of land

who delivers temporary possession of a portion of the land to an independent contractor owes no duty to the employees of the independent contractor *with respect to an obviously dangerous condition on that portion of the land in the possession of the contractor." Hader v. Coplay Cement Manufacturing Co.*, 410 Pa. 139, 151, 189 A.2d 271, 277 (1963)(emphasis supplied). It has also been said that the employer of an independent contractor has no duty to warn the contractor or his employees of a condition that is at least as obvious to them as it is to him. *Repyneck v. Tarantino*, 415 Pa. 92, 202 A.2d 105 (1964). In addition, the owner of property is under no duty to protect the employees of an independent contractor from risks arising from or intimately connected with defects or hazards which the contractor has undertaken to repair or which are created by the job contracted. *Celender v. Allegheny County Sanitary Authority*, 208 Pa. Super. 390, 222 A.2d 461 (1966) (allocator refused).

■ In sum, whether the owner of premises owes to his independent contractor a duty to warn of dangerous conditions on the premises can be said to turn on whether the owner, at the time he enters the contract, possesses "superior knowledge," *Grace, supra*, 369 Pa. at 272, 85 A.2d at 121, or information which places him in a superior position to appreciate the risk posed to the contractor or his employees by the dangerous conditions.

We believe the trial court erred in taking from the jury's consideration the question whether PECO breached an existing duty to warn its contractors or their employees of the existence and location of the underground power line. We are persuaded by what was said by our Court in *Densler v. Metropolitan Edison Co.*, 235 Pa. Super. 585, 590–91, 345 A.2d 758, 761 (1975):

Our courts have long recognized that the standard of care imposed upon a supplier of electric power, particularly when that power is supplied at high voltage, is among the highest recognized in the law of negligence. "A supplier of electric current 'is bound not only to know the

extent of the danger, but to use the very highest degree of care practicable to avoid injury to every one who may be lawfully in proximity to its wires, and liable to come accidentally or otherwise, in contact with them.' " *Brillhart v. Edison Light & Power Co.*, 368 Pa. 307, 312, 82 A.2d 44, 47 (1951), *citing Fitzgerald v. Edison Electric Illuminating Co.*, 200 Pa. 540, 543, 50 A. 161 (1901) and other authority. "That a transmission line is a dangerous instrumentality is recognized everywhere. No matter where located it is a source of grave peril and the law requires that the possessor of such an instrumentality exercise a high degree of care[.]" *Yoffee v. Pa. Power & Light Co.*, 385 Pa. 520, 536, 123 A.2d 636, 645 (1956). *See also Ashby v. Philadelphia Electric Co.*, 328 Pa. 474, 195 A. 887 (1938).

[4] The "very highest degree of care" incumbent upon a supplier of electric power includes, in appropriate circumstances, the duty to warn an independent contractor of non-obvious dangers inherent in working in close proximity with high-tension wires. *See Mathis v. Lukens Steel Co.*, 415 Pa. 262, 203 A.2d 482 (1964); *see also Fuller v. Palazzolo*, 329 Pa. 93, 197 A. 225 (1938).

Here it is undisputed that PECO took no steps whatsoever to warn the independent contractor or its employees of a highly dangerous condition existing in the place where the excavation was to be done. PECO's 13,200-volt line was in very close proximity to the water pipe to be repaired; in fact, the concrete structure housing the power line "saddled" up around the pipe to the extent of two or three inches, N.T. at 448, 452, so that the cement had to be broken in order to repair the pipe. *Id.* at 42, 416. George Kull, Mr. Colloi's foreman on the job, testified that he had never seen utility lines running so close to one another, *id.* at 458; he assumed that the concrete structure was a "thrust block" poured around the pipe to hold it in place. *Id.* at 413–14, 430–32, 435, 452–54. The danger posed by the 13,200-volt power line lurking within the concrete structure was not suspected by the workers, as Mr. Kull testified

on cross-examination: "Q. And did you have any cause to believe that there was an electric line through that concrete block? A. We would have never been digging if I thought there was electric nearby." *Id.* at 449.

For its part appellee PECO, which owned, operated, and controlled the substation, had available at the site blueprints, charts, and diagrams of the electrical lines emanating from the substation. *Id.* at 10 (Stipulation). Although a PECO employee on the scene reviewed plans or blueprints of the water sprinkler system with Kull and Koerper, *id.* at 26, 114, 129, 407, the electrical plans were not reviewed, *id.* at 444–45, 456–57. Furthermore, at the point where Colloi's excavation had revealed the broken water pipe and the underlying concrete structure, and immediately before Colloi began to break up the concrete, the PECO employee was present as an observer but failed to make any warning that the concrete structure housed a power line. *Id.* at 39–40, 42–43. Clearly, at no point was Colloi alerted to the existence of a power line in the place where he was ordered to dig. *Id.* at 130.

■ The trial court relied on other evidence tending to show that it was the duty of the independent contractor, rather than PECO, to ascertain the location of electrical lines at the job site. Specifically, the court cited the following line of questioning of Herald Contractors' foreman, George Kull:

Q: Okay. Did you make any request of anyone at the Philadelphia Electric Company prior to the accident concerning what underground facilities were under the block?

A: No.

Q: Had you ever done that in the past in excavating? During your line of work, had you ever made a request of the electric company or the gas company to locate facilities for you during or before you excavated?

A: Yes. On all our jobs, we call three days in advance to all utilities that have structures in the area; and they come and locate before we start and mark everything.

Q: Okay. Why didn't you make any requests in this particular case?

A: Well, it's not my—not my place to do it. It's our office's responsibility to do this before you go out on the job. And since this was an emergency, I guess—well, in the first place, it wouldn't apply here because this is inside the property line and we do all our work in the street and in the right of ways and, you know, very rarely on private property. So, that doesn't apply in this case.

Q: You did realize that if you would have asked the Philadelphia Electric Company someone would have told you where their facilities were; is that correct?

A: I don't know that.

Trial ct. slip op. at 5–6, *quoting* N.T. at 429–30. This testimony does not conclusively establish that PECO had no affirmative duty to warn its business invitees of the hazardous condition created by the proximity between the power line and the water line. *See Janowicz v. Crucible Steel Co. of America,* 433 Pa. 304, 249 A.2d 773 (1969).

 As a general rule, questions of negligence or neglect of duty are for the jury if there is any credible evidence to support a reasonable conclusion that the defendant is liable; and the court may rule as a matter of law on such questions only when the evidence is clear and unmistakable. *Ashby v. Philadelphia Electric Co., supra; Hargrove v. Frommeyer & Co.,* 229 Pa. Super. 298, 323 A.2d 300 (1974); *Ostrowski v. Crawford Door Sales Co.,* 207 Pa. Super. 424, 217 A.2d 758 (1966). We believe the case should have been submitted to the jury to decide whether in the circumstances PECO met the high degree of care imposed on handlers of high-voltage electric power, or fulfilled its duty to warn the independent contractor of non-obvious dangers on the premises. *See and compare Magill v. Westinghouse Electric Corp.,* 327 F.Supp. 1097 (E.D.Pa.

1971), *modified on other grounds*, 464 F.2d 294 (3rd Cir. 1972).

■ Appellants also contend that their case against PECO should have proceeded to the jury on the theories of liability set out in the Restatement (Second) of Torts §§ 416, 427, which state:

§ 416. **Work Dangerous in Absence of Special Precautions**

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

§ 427. **Negligence as to Danger Inherent in the Work**

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

The duties defined in these sections are said to be "non-delegable"; they impose vicarious liability for the negligence of an independent contractor upon one who employs the contractor to do work involving heightened risks of physical harm to third parties. *Id.,* ch. 15, Topic 2, Introductory Note at 394.

■ Our Supreme Court has adopted sections 416 and 427 as the law of Pennsylvania. *Philadelphia Electric Co. v. James Julian, Inc.,* 425 Pa. 217, 228 A.2d 669 (1967); *see also Gilbert v. Korvette's, Inc.,* 457 Pa. 602, 611–12 n.25, 327 A.2d 94, 100 n.25 (1974); *McDonough v. United States Steel Corp.,* 228 Pa. Super. 268, 324 A.2d 542 (1974); *Toole*

*v. United States,* 588 F.2d 403 (3rd Cir.1978); *Sharkey v. Airco, Inc.,* 522 F.Supp. 646 (E.D.Pa.1981). In Pennsylvania, employees of an independent contractor are among the third parties to whom the duties specified in sections 416 and 427 flow. *Hargrove v. Frommeyer & Co., supra; see Heath v. Huth Engineers, Inc.,* 279 Pa. Super. 90, 420 A.2d 758 (1980) (allocatur refused Oct. 7, 1980); *Draper v. Airco, Inc.,* 580 F.2d 91 (3rd Cir.1978); *Wagner v. Grannis,* 287 F.Supp. 18 (W.D.Pa.1968).

 We hold that appellants' evidence was sufficient to make out a prima facie case against PECO under sections 416 and 427 of the Restatement. We think it unarguable that PECO employed an independent contractor "to do work which the employer should [have] recognized[d] as likely to create during its progress *a peculiar risk of physical harm to others unless special precautions [were] taken,"* § 416 (emphasis added), and to do *"work involving a special danger to others which the employer kn[ew] or ha[d] reason to know to be inherent in or normal to the work, or which he contemplate[d] or ha[d] reason to contemplate when making the contract,"* § 427 (emphasis added). We also note that there was ample evidence that either or both of the independent contractors employed in this case, Joseph Scholl, Inc. and Herald Contractors, Inc., failed to take special or reasonable precautions which would seem to have been required by the work they were engaged in. The contractors' agents were fully aware that they were excavating beneath an electrical substation, yet neither took any steps to ascertain whether there were power lines in the area to be excavated. The elements of a case under sections 416 and 427 of the Restatement were thus made out.

Therefore, for the reasons stated in this opinion, the case must be remanded for a new trial on PECO's liability.[2]

---

**2.** Appellant offers additional theories of liability against PECO based on the Restatement (Second) of Torts § 323 (Negligent Performance of Undertaking to Render Services) and §§ 519–20 (Abnormally Dangerous Activities). At the time of oral argument on appellees' motions for directed verdict, these theories were not presented to the trial court, nor is there any indication they were presented to the court en

As for the additional defendant, Joseph Scholl, Inc., we believe it has demonstrated its immunity from common law suit by virtue of a meritorious statutory employer defense under the Pennsylvania Workmen's Compensation Act. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1603.

■ The liability of an employer to an employee under the Workmen's Compensation Act is exclusive of all other remedies. P.S. § 481. The employer of a subcontractor is by statute the employer of the subcontractor's employees, in the circumstances set forth in *id.* § 52:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

*See also* 1 Barbieri, *Pennsylvania Workmen's Compensation & Occupational Disease* § 4.09(3) (1975). In *McDonald v. Levinson Steel Co.*, 302 Pa. 287, 153 A. 424 (1930), our Supreme Court set out five elements which must be proven to establish statutory employer status under the section of the Act just quoted. These elements are:

(1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. (4) Part of the employer's regular business entrusted to such subcontractor. (5) An employee of such subcontractor.

*Id.*, 302 Pa. at 295, 153 A. at 426.

Appellants concede that appellee Joseph Scholl, Inc. met criteria (1), (3), and (5) for statutory employer status, but contend that criteria (2) and (4) were not established in this case.

banc. Accordingly we will not address them. *Morgan v. Sbarbaro*, 307 Pa. Super. 308, 453 A.2d 598 (1982).

With respect to criterion (2), the element of control, appellants contend that Scholl did not exercise "exclusive" control over the work premises, in that PECO never relinquished possession of the substation or the electrical conduit. We reject this contention as meritless. In the first place, the law does not require that a statutory employer's control of the work premises be "exclusive" of the owner's possession of the premises. *See Davis v. City of Philadelphia*, 153 Pa. Super. 645, 35 A.2d 77 (1943); *Draper v. Airco, supra; Hattersley v. Bollt*, 512 F.2d 209 (3rd Cir.1975). Secondly, the plaintiffs' own evidence showed that Scholl's agent on the scene, Edward Koerper, marked the spot where excavation was to be done and exercised actual supervisory control over the entire job. N.T. at 30, 38–39, 82, 405–07, 444. George Kull, the foreman for Herald Contractors, admitted in his testimony that Koerper was "running the show." *Id.* at 410. Under the case law this evidence clearly established the element of control in Scholl. *See, e.g., Cranshaw Construction, Inc. v. Ghrist*, 290 Pa. Super. 286, 434 A.2d 756 (1981) (allocatur refused Jan. 4, 1982); *Pape v. Smith*, 227 Pa. Super. 80, 323 A.2d 856 (1974); *Wright Demolition & Excavating Co. v. Workmen's Compensation Appeal Board*, 61 Pa.Cmwlth. 479, 434 A.2d 232 (1981) (allocatur refused Dec. 28, 1981); *Perma-Lite of Pennsylvania, Inc. v. Workmen's Compensation Appeal Board*, 38 Pa.Cmwlth. 481, 393 A.2d 1082 (1978).

As for criterion (4), appellants' argument that the work entrusted to Herald Contractors was not part of Scholl's "regular business" is worthy of little comment. The contract between Scholl and PECO, *see Pape v. Smith, supra,* as well as the uncontradicted testimony of George Kull, N.T. at 401–02, 408, proved beyond peradventure that the repair work being done at the substation was part of Scholl's "regular business." *See Sgattone v. Mulholland & Gotwals, Inc.*, 290 Pa. 341, 138 A. 855 (1927); *Wiltrout v. Circle Mobile Home Sales, Inc.*, 293 Pa. Super. 131, 437 A.2d 1240 (1981) (allocatur refused Apr. 2, 1982); *Cran-*

*shaw Construction v. Ghrist, supra; Davis v. Philadelphia, supra.* The case cited by appellants, *Industrial Valley Bank & Trust Co. v. Workmen's Compensation Appeal Board,* 16 Pa.Cmwlth. 420, 332 A.2d 882 (1975), does not support their position.

With respect to appellee Joseph Scholl, Inc., the judgment entered on the directed verdict is affirmed; with respect to appellee PECO, the judgment is reversed and the case remanded for a new trial. Jurisdiction not retained.

CAVANAUGH, J., files a concurring opinion.

CAVANAUGH, Judge, concurring:

I concur in the result reached in the majority, but write to express a single disagreement. I agree with the majority that PECO, as a supplier of high voltage electrical power, had a duty to warn the independent contractor (Scholl) and its employees of the location of the underground high tension power line, and therefore was not insulated from liability as a matter of law. *Densler v. Metropolitan Edison Co.,* 235 Pa.Super. 585, 345 A.2d 758 (1975). However, I depart from the majority in its proposal that appellant's case against PECO should have been placed before a jury on the theories explained in Restatement (Second) Torts §§ 416 and 427. These sections are set forth in the Restatement (Second) under Topic 2, Harm Caused by Negligence of A Carefully Selected Independent Contractor. The Introductory Note to Topic 2 states:

> The rules stated in the following §§ 416–429, unlike those stated in the preceding §§ 410–415, do not rest upon any personal negligence of the employer. They are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault. They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor. The liability imposed is closely analogous to that of a master for the negligence of his servant.

The case at bar is not a case of vicarious liability, which would cause PECO to be liable for the negligence of Scholl; instead, as the majority acknowledges in its opinion, PECO itself may be found liable for its failure to warn Scholl or its employees of the highly dangerous condition of the job situs. Such potential liability is PECO's liability, and would not have been activated by any negligence of Scholl. Moreover, I believe that §§ 416 and 427 were intended to provide a basis for recovery by third persons ("others"), not for employees of independent contractors or sub-contractors. The policy reasons do not extend to such employees.

As for the liability of the additional defendant, Scholl, we agree with the majority that Scholl is immune from an action at common law because Scholl was appellant's statutory employer.