J-A15021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TROY CZAPOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| SPORTSPLEX OPERATIONS GROUP, LLC., TENNIS SURFACES COMPANY, AND SOCCER TENNIS SURFACES | |
| Appellees | No. 1989 EDA 2020 |

Appeal from the Order Entered September 3, 2020
In the Court of Common Pleas of Montgomery County
Civil Division at No.: No. 2016-10031

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 22, 2021**

Appellant/plaintiff Troy Czapor ("Czapor") appeals from the September 3, 2020 order entered in the Court of Common Pleas of Montgomery County ("trial court"), which granted summary judgment in favor of Appellee/defendant Sportsplex Operations Group, LLC ("Sportsplex"),[1] and dismissed with prejudice Czapor's negligence claim.  Upon review, we affirm.

Following a sports injury, on May 18, 2016, Czapor initiated a civil action against Sportsplex, alleging a single count for negligence.  In support, Czapor alleged that, on July 14, 2014, he "was engaging in a soccer event" held inside a facility owned, controlled, or maintained by Sportsplex and located at 654

_____

[1] Czapor stipulated to dismissing with prejudice all claims against Tennis Surfaces Company and Soccer Tennis Surfaces.  As a result, they are not a party to this appeal.

York Road, Warminster, PA (the "Premises"). Complaint, 5/18/16, at ¶¶ 5-6. According to Czapor, he was playing soccer "when suddenly and without warning his right leg got caught in a depression, hole, seam, rip or tear in the turf." *Id.* at ¶ 5. As a result, Czapor allegedly sustained, *inter alia*, "a right tibia fracture requiring surgery and hospitalization." *Id.* at ¶ 9. Czapor alleged that Sportsplex's negligence consisted of, *inter alia*, creating or otherwise allowing a dangerous and defective condition to exist on the Premises. *Id.* at ¶ 19. The complaint also included a catch-all provision, alleging "[s]uch further negligence and carelessness as the circumstances and discovery shall disclose." *Id.* at ¶ 19(h).

On August 4, 2016, Czapor agreed to strike, among others things, subparagraph 19(h) relating to further negligence from the complaint. *See* Reproduced Record (R.R.) at 25a. On the same day, Sportsplex filed an answer, denying the averments of the complaint and asserting new matter and cross claims against co-defendants Tennis Surfaces Company and Soccer Tennis Surfaces. Specifically, Sportsplex alleged in the new matter that Czapor's "claims must be barred by the provisions of the Waiver and Release signed by [Czapor] pursuant to his participation in the activities" at the Premises in question. Answer, 8/4/16, at ¶ 39. Czapor denied the averments contained in Sportsplex's answer as containing conclusions of law and demanding strict proof. R.R. at 37a.

Following the completion of discovery, Sportsplex moved for summary judgment against Czapor. Relying upon Czapor's deposition testimony,

Sportsplex pointed out that Czapor "stepped in a hole in the artificial turf and, while he was trying to pull out his foot, he was struck from behind by another player." Summary Judgment Motion, 5/28/20, at ¶ 3. Sportsplex also alleged that, prior to engaging in sports activities on the Premises, Czapor executed an exculpatory waiver, releasing Sportsplex from liability arising out of ordinary negligence and assuming the risk of any injury. *Id.* at ¶ 6. According to Sportsplex, participants, like Czapor, were required to read and sign a "Smartwaiver Certificate of Authenticity." *Id.* at ¶ 8. Sportsplex noted that Czapor was familiar with exculpatory waivers. *Id.* at ¶ 9. Czapor's deposition testimony indicated that he previously had to sign such waivers prior to playing soccer at other facilities. *Id.* It was Sportsplex's allegation that, upon showing Czapor a copy of the four-page exculpatory waiver at his deposition, he admitted that he read, understood and electronically signed the same on July 3, 2014. *Id.* at ¶¶ 10-12. The waiver provides in relevant part:

> **Waiver:** In signing this waiver form below, I release [Sportsplex], and all of their agents, employees, independent contractors, equipment suppliers, and members (hereafter collectively referred to as Sportsplex) from any claims or responsibility for injuries suffered in any activities or events conducted by Sportsplex, whether occurring within or outside of the facility. I knowingly assume all risks associated with participation, even if arising from negligence of the participants or others, and assume full responsibility for my (or my child's) participation today and on all future dates.

> **Certification:** I, the participant/parent/certify that I am, or my child is, in good physical condition and can participate in sports and related activities, and I further agree and warrant that at any time I believe conditions to be unsafe, I will immediately discontinue further participation for myself or my child in the

activity. If an emergency arises, I authorize [Sportsplex] staff to request and/or administer medical treatment to myself, or my child, if necessary.

**Assumption of inherent risks:** I, the adult participant, or minor participant and parent(s) or guardian(s) (hereafter referred to as participant/parent), understand that all activities of Sportsplex include inherent risks that cannot be totally eliminated regardless of the care taken by Sportsplex. I, the participant/parent know, understand, and appreciate the types of injuries inherent in Sportsplex's activities, and hereby knowingly assume all inherent risks of the activities. Furthermore, as a participant/parent, on behalf of myself, my spouse, heir, personal representatives, and assigns (releasing parties) ***do hereby waive, release, discharge and covenant not to sue Sportsplex for alleged liability from any and all claims arising from the ordinary negligence of the protected parties***.

**Scope:** This agreement applies to personal injury, including death, from incidents or illnesses arising from participation in Sportsplex activities including, but not limited to recreational, practice, or competitive activity; events; organized or individual training and conditioning activities; tests; classes and instruction; individual use of facilities; equipment, locker room areas, and all premises, or attendance at such activities whether or not as a participant, including the associated sidewalks and parking lots, and to any and all claims resulting from the damage to, loss of, or theft of property ("the inclusive activities").

**Indemnification:** I, the participant/parent, also agree to hold harmless, defend, and indemnify Sportsplex – that is, defend and pay any costs, including damages awarded, investigation costs, attorney's fees, and related expenses – from any and all claims arising from my or my child's participation in the inclusive activities. I, the participant/parent, further agree to hold harmless, defend, and indemnify Sportsplex against any and all claims of co-participants, rescuers, and other arising from the conduct of the participant in the inclusive activities.

**Clarifying Clauses:** I, the participant/parent, confirm that this agreement supersedes any and all previous oral or written promises or agreements. I understand that this is the entire agreement between Sportsplex and myself regarding waiver and acceptance of risk, and cannot be modified or changed in any way

by representations or statements by any agent or employees of Sportsplex. I, the participant/parent, understand the foregoing assumption of risk, waiver of liability, and indemnification agreement is intended to be as broad and inclusive as permitted by the laws of the State of Pennsylvania, and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect, and if legal action is brought, the appropriate trial court for the County of Bucks, in the State of Pennsylvania has the sole and exclusive jurisdiction and that only the substantive laws of the State of Pennsylvania shall apply.

**Acknowledgement and Understanding:** I, the participant/parent, have read and understand this agreement. I understand that I am giving up substantial rights, including the right of the participant/child to sue for damages in the event of death, injury, or loss. I acknowledge that I am voluntarily signing the agreement, and ***intend my signature to be a complete release of all liability, including that due to ordinary negligence by the protected parties***, to the greatest extent allowed by the laws of the State of Pennsylvania.

Also, by signing below, I take all responsibility for knowing and abiding by the rules of the Sportsplex. If I do not abide by the rules of the Sportsplex, I risk being banned from the facility and having my money forfeited.

Sportsplex Smartwaiver Certificate of Authenticity, 7/3/14, at 1-2 (emphasis added). Based on the terms of the waiver, Sportsplex alleged that Czapor was barred from asserting a negligence claim against it. *Id.* at ¶¶ 19-21.

On June 3, 2020, Czapor stipulated to the dismissal with prejudice of all claims against Tennis Surfaces Company and Soccer Tennis Surfaces. On July 31, 2020, Czapor responded to the summary judgment motion, asserting for the first time that Sportsplex's conduct constituted "gross negligence." Opposition to Summary Judgment, 7/17/20, at ¶¶ 13-21. As a result, Czapor

asserted that Sportsplex was not entitled to summary judgment based on the exculpatory waiver. *Id.*

On July 31, 2020, Sportsplex filed a reply to Czapor's opposition to its motion for summary judgment. Sportsplex argued that Czapor mentioned "gross negligence" for the first time in its opposition to summary judgment and that Czapor "was required to put [Sportsplex] on notice of claims of gross negligence and/or recklessness in its [c]omplaint or by way of filing a motion for leave to amend its [c]omplaint after eliciting alleged facts to support these claims. Reply to Czapor's Opposition to Summary Judgment, 7/31/20, at 3. Additionally, Sportsplex noted that none of Czapor's experts opined that Sportsplex's conduct at issue was more than ordinary negligence. *Id.* at 4-5.

On September 3, 2020, the trial court granted Sportsplex's motion for summary judgment without a hearing[2] and dismissed all claims with prejudice against Sportsplex.

On September 11, 2020, Czapor moved for reconsideration, claiming that the trial court erred as a matter of law in granting Sportsplex's summary judgment motion because "numerous genuine issues of material fact" existed. Reconsideration Motion, 9/11/20, at ¶ 6. Specifically, Czapor argued that the trial court's grant of summary judgment in favor of Sportsplex encroached on the domain of the jury to determine the question of gross negligence. *Id.* at ¶¶ 10-11, 15.

_____

[2] Our review of the record reveals that Czapor requested oral argument on the cover sheet when he filed his opposition to the summary judgment motion.

On September 21, 2020, Sportsplex responded to Czapor's reconsideration motion. Sportsplex reiterated that Czapor first mentioned gross negligence in his opposition to Sportsplex's motion for summary judgment, his complaint was devoid of any indication that gross negligence was pled, and that Czapor did not seek leave of court to amend the complaint to plead gross negligence. Sportsplex's Memorandum in Opposition to Reconsideration Motion, 9/21/20, at 4.

On September 22, 2020, the trial court held a hearing on Czapor's reconsideration motion. At the hearing, counsel for Sportsplex argued that Czapor's negligence claim was barred by the exculpatory waiver that he had signed. N.T., Hearing, 9/22/20, at 3. Counsel argued that Czapor did not plead facts indicating gross negligence in his complaint or mention gross negligence during discovery. *Id.* According to counsel, Czapor first mentioned gross negligence in his opposition to Sportsplex's motion for summary judgment. *Id.* Counsel also argued that Czapor failed to file a motion for leave of court to amend the complaint to plead gross negligence based upon the facts of the case. *Id.*

In response, counsel for Czapor argued that, in subparagraph 19(h) – the catch-all provision – Czapor asserted gross negligence when he alleged "[s]uch *further negligence* and carelessness as the circumstances and discovery shall disclose." *Id.* at 4-5 (emphasis added). Counsel further argued that Sportsplex could have sought clarification of subparagraph 19(h) of the complaint, but Sportsplex "didn't do it." *Id.* at 13. Counsel for Czapor

also argued, without record support, that at the time of the September 22 hearing no case management order was in place, discovery was not completed, and certain motions to compel discovery filed by Czapor were still pending. *Id.* at 23. The record, however, revealed that the trial court denied a motion to extend discovery on March 5, 2020[3] and that a case management order dated January 9, 2020 was in effect at the time of the hearing. *Id.* at 24-25; *see* R.R. at 1b-2b. Additionally, no motions to compel discovery were pending at the time of the September 22, 2020 hearing. At the close of the hearing, counsel for Czapor **attempted** to file an oral motion to amend the complaint to plead facts showing gross negligence. *Id.* at 26.

> THE COURT: We are not at a motion to amend. We're at a motion for summary judgment, and that's really not germane as to what we are arguing here today.
>
> [CZAPOR'S ATTORNEY]: Correct. The issue, Your Honor, is *__if__* that is what's required, I [*__will__*] make an oral application before the court –
>
> THE COURT: You can't do that now. We're here arguing a motion for summary judgment. You can't do that now. Okay. Anything further?

*Id.* (unnecessary capitalizations omitted) (emphasis added).[4] On the same day, the trial court denied Czapor's reconsideration motion. Czapor timely

---

[3] Discovery was to conclude on March 9, 2020.

[4] Separately, earlier during the hearing, counsel for Czapor indicated that the rules of civil procedure permitted him to amend the complaint up until trial. N.T., Hearing, 9/22/20, at 16-17 (stating "Your Honor, when it says such further negligence and carelessness as the circumstances in discovery shall

*(Footnote Continued Next Page)*

appealed. The trial court directed Czapor to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Czapor complied. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal, Czapor presents five issues for our review.

I.   Did the trial court abuse its discretion and/or err as a matter of law when it granted summary judgment, and held that a reasonable jury could not conclude [Sportsplex] engaged in grossly negligent conduct?

II.  Did the trial court err as a matter of law when it determined [Czapor's] claimed were barred by waiver?

III. Did the trial court err as a matter of law by holding that [Czapor] failed to properly plead gross negligence in his complaint?

IV.  Did the trial court err as a matter of law by holding that [Sportsplex] would suffer prejudice if [Czapor] were permitted to amend his complaint?

V.   Did the trial court err as a matter of law when it determined [Czapor's] claims were barred by the doctrine of assumption of risk?

Czapor's Brief at 4 (unnecessary capitalizations omitted).

For ease of disposition, we combine Czapor's first four claims. Czapor argues that the trial court erred in granting summary judgment as a matter of law based on the application of the exculpatory waiver where Czapor pled

_____

disclose, I would make an application to amend and have gross negligence before this jury."). At that point, counsel's sole request for the trial court was to allow this case to proceed to jury trial and to instruct the jury at the close of trial on "gross negligence rather than" ordinary negligence. *Id.* at 19. In exchange, counsel indicated that he would agree to the application of the exculpatory waiver. *Id.*

sufficient facts in his complaint to assert gross negligence. Moreover, he argues that the trial court abused its discretion in rejecting his request to amend the complaint.[5]

We review a challenge to the entry of summary judgment as follows:

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P. No. 1035.2. The rule [provides] that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*E.R. Linde Const. Corp. v. Goodwin*, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted; brackets in original).

Pennsylvania law burdens a plaintiff on a negligence claim to successfully establish the proverbial four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between

---

[5] As Sportsplex notes, *see* Appellee's Brief at 19-21, and we agree, Czapor did not challenge the validity of the exculpatory waiver before the trial court and, as a result, he may not do so now on appeal. *See* 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Thus, we proceed herein with the waiver uncontested as valid.

the conduct and the resulting injury; and (4) actual damages." ***Estate of Swift by Swift v. Northeastern Hosp.***, 690 A.2d 719, 722 (Pa. Super. 1997), ***appeal denied***, 701 A.2d 577 (Pa. 1997). "The burden of proving the existence of negligence rests upon the party who has asserted it." ***Schmoyer by Schmoyer v. Mexico Forge, Inc.***, 649 A.2d 705, 707 (Pa. Super. 1994). "The mere fact that an accident has occurred does not entitle the injured person to a verdict. A plaintiff must show that the defendant owed a duty of care, and that this duty was breached." ***Rauch v. Mike-Mayer***, 783 A.2d 815, 824 n.8 (Pa. Super. 2001) (internal citations omitted), ***appeal denied***, 793 A.2d 909 (Pa. 2002).

In ***Feleccia v. Lackawanna College***, 215 A.3d 3 (Pa. 2019), our Supreme Court noted that it had not "previously settled on a definitive meaning" of gross negligence vis-à-vis ordinary negligence in the civil context. ***Feleccia***, 215 A.3d at 19. However, in defining gross negligence, the Court recognized that it involves "something more than ordinary negligence," and indicates a "want of even scant care" and an "extreme departure" from ordinary care. ***Id.*** at 20; ***see also*** Pa. SSJI (Civ) § 13.50 ("Gross negligence is significantly worse than ordinary negligence," requiring proof that an actor "significantly departed from how a reasonably careful person would have acted under the circumstances."); *Black's Law Dictionary* (11th ed. 2019) (defining gross negligence as a "lack of even slight diligence or care," "[a] conscious , voluntary act or omission in reckless disregard of a legal duty and the consequences to another party[.]"). In other words, the Court explained that

"gross negligence does not rise to the level of intentional indifference or 'conscious disregard' of risks that defines recklessness, but it is defined as an 'extreme departure' from the standard of care, beyond that required to establish ordinary negligence." **Feleccia**, 215 A.3d at 20. In the context of exculpatory waivers, the Court held that an exculpatory waiver "does not bar recovery for damages arising from gross negligence or recklessness." **Id.** at 21. Furthermore, it generally is for a jury to determine whether a party acted grossly negligent. **Albright v. Abington Mem. Hosp.**, 696 A.2d 1159, 1165 (Pa. 1997); **accord Colloi v. Philadelphia Electric Co.**, 481 A.2d 616, 621 (Pa. Super. 1984).

Instantly, the record before us, as detailed above, reveals that Czapor mentioned gross negligence for the first time in his response to Sportsplex's motion for summary judgment. Czapor opposed summary judgment based on his belief that the waiver was unenforceable because "issues of fact" existed regarding Sportsplex's conduct amounting to grossly negligence conduct. R.R. at 171a-174a. He, however, did not identify the issues or what conduct by Sportsplex allegedly rose to gross negligence. Czapor also did not attempt or seek to assert—at any stage of the proceedings **prior to** the hearing on his reconsideration motion following the trial court's grant of summary judgment in favor of Sportsplex—the gross negligence by amending his complaint. Tellingly, as Sportsplex points out, Czapor stipulated to strike subparagraph 19(h) from the complaint. That subparagraph, had it remained

in the complaint,[6] would have provided Czapor with a mechanism for asserting other negligence, including gross negligence, following additional discovery. Even beyond subparagraph 19(h), Czapor's complaint did not contain any factual allegations sufficient to make out a claim for gross negligence. **See** Trial Court Opinion, 11/17/20, at 7 (Czapor's complaint "is devoid of any claim of gross negligence or factual allegations that [Sportsplex's] conduct amount to anything other than ordinary negligence."). In the complaint, Czapor simply alleged that Sportsplex's negligence consisted of, *inter alia*, creating or otherwise allowing a dangerous and defective condition to exist on the Premises. Complaint, 5/18/16, at ¶ 19. Nothing in the complaint suggested that Sportsplex's conduct constituted an extreme departure from the standard of care. Because Czapor did not raise gross negligence,[7] or challenge the validity of the waiver, we conclude that the waiver at issue relieves Sportsplex of liability arising from the singular claim of ordinary negligence asserted by Czapor.[8] Thus, upon careful review of the entire record, viewed in the light most favorable to Sportsplex as the non-moving party, we must agree with

---

[6] We offer no opinion on the propriety of subparagraph 19(h) or its effectiveness to survive a possible preliminary objection.

[7] Unlike Czapor, the plaintiffs in **Feleccia** asserted gross negligence in their complaint and in their reply to preliminary objections, in their memorandum of law in reply to preliminary objections, and in their memorandum of law in opposition to motion for summary judgment. **Feleccia v. Lackawanna Coll.**, 156 A.3d 1200, 1213 (Pa. Super. 2017). Because the issue was raised, the Supreme Court considered the effect of gross negligence on exculpatory waivers.

[8] Considering the disposition, we need not address the issue of whether Czapor assumed the risk of injury.

the trial court's conclusion that Czapor's negligence claim fails to overcome the exculpatory waiver. Accordingly, the trial court did not err in granting Sportsplex's motion for summary judgment.

To the extent Czapor claims that the trial court abused its discretion in failing to grant him leave to amend the complaint, he is mistaken. Our standard of review of a trial court's order denying a party leave to amend a pleading is limited to considering whether the trial court erred as a matter of law or abused its discretion. **Schwarzwaelder v. Fox**, 895 A.2d 614, 621 (Pa. Super. 2006). Pennsylvania Rule of Civil Procedure 1033(a) permits amendment of pleadings and provides that "[a] party, either by filed consent of the adverse party or by leave of court, may at any time ... amend the pleading." However, although Rule 1033(a) provides a method for amending a pleading, it does not provide a party the automatic right to do so. **See id.** (requiring consent or leave of court to amend a pleading). While the right to amend should not be withheld when there is some reasonable possibility that the amendment can be accomplished successfully, "where allowance of an amendment would . . . be a futile exercise, the [pleading] may be properly dismissed without allowance for amendment." **Wiernik v. PHH U.S. Mortg. Corp.**, 736 A.2d 616, 624 (Pa. Super. 1999).

Here, as we outlined earlier, Czapor at no point prior to the September 22, 2020, hearing on his reconsideration motion sought the trial court's leave to amend the complaint. Indeed, at the September 22 hearing Czapor's counsel merely expressed a tepid aspiration to amend the complaint when he

stated: "I [**will**] make an oral application before the court," **if** that is what is required. N.T., Hearing, 9/22/20, at 26 (emphasis added). Accordingly, because Czapor did not move to amend the complaint, it follows that the trial court could not and did not render a ruling – an impossibility. Czapor obtains no relief.

Even if we were to conclude that Czapor requested leave to amend the complaint, we must agree with Sportsplex that the request was untimely and therefore waived, because it was made for the first time during the September 22 hearing on Czapor's reconsideration motion following the trial court's grant of summary judgment in favor of Sportsplex. Czapor had ample opportunity to seek amendment of the complaint: before and during discovery, and in his opposition to Sportsplex's motion for summary judgment. ***See generally Stange v. Janssen Pharms., Inc.***, 179 A.3d 45, 64 n.7 (Pa. Super. 2018) (issue raised for the first time in motion for reconsideration to trial court was waived); ***Meyer-Chatfield Corp. v. Bank Fin. Servs. Grp.***, 143 A.3d 930, 938 n.4 (Pa. Super. 2016) (same); ***Rabatin v. Allied Glove Corp.***, 24 A.3d 388, 391 (Pa Super. 2011) (refusing to consider issues that could have been raised earlier but were raised for the first time in a motion for reconsideration); ***Prince George Center, Inc. v. United States Gypsum Co. (In re Prudential Ins. Co. of Am.)***, 704 A.2d 141, 145 (Pa. Super. 1997) (holding that issues raised initially in a motion for reconsideration are beyond the scope of appellate jurisdiction and declining to consider them on appeal).

In sum, we affirm the trial court's grant of summary judgment in favor of Sportsplex. The exculpatory waiver executed by Czapor relieves Sportsplex from all liability in connection with Czapor's sole claim for negligence related to his sports injury on the Premises. Additionally, Czapor cannot circumvent the preclusive effect of the waiver because he failed to plead sufficient facts in his complaint to assert a claim for gross negligence. Finally, Czapor failed or timely failed to request the trial court's leave to amend the complaint.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2021

- 16 -