McEWEN, Judge,
dissenting:
The author of the majority view has, in his usual fashion, proceeded to so perceptive and persuasive an expression of *493 position that I am hesitant to differ. Nonetheless, I am obliged to this statement of dissent. Simply put, I would impose upon the architect a duty to protect workers from hazards on construction sites, and would not restrict that duty by imposition of a condition precedent that the architect have agreed, either by contract or course of conduct, to supervise and/or control the construction or the maintenance of safe conditions on the construction site.
The complaint, specifically, paragraph 14, includes an allegation that the architect was negligent by reason of a failure to warn of the hazards, including, the fact that the power line was not insulated. While, as the majority opines, the overhead line itself was as visible to the sub-contractor and his workmen as it was to the architect, (1) even a workman with 20/20 vision lacks the depth perception needed to determine the meaningful proximity of the wire, and (2) a workman should not be required to test the line to determine if the wire is insulated. Rather, it strikes me that the architect, in this era of an enlightened concern for the safety of the worker, has a duty to the workers who will perform the construction delineated on the plans to highlight upon those plans the life-threatening aspects of their working environment.
Our Supreme Court long ago ruled that visibility of a power line is not the critical element in cases arising from injuries sustained by a worker from a power line:
The presence of the power lines in and of itself did not indicate obvious danger. Plaintiff was not bound to know the degree of danger involved. “Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case.” Lehigh, on the other hand, was bound to know the degree of danger involved. Those handling electricity of high voltage are not only bound to know the extent of the danger but to use the very highest degree of care practicable to avoid injury to everyone who may be lawfully in proximity to such *494 wires and liable to come accidentally or otherwise in contact with them.
}}c sfc :}: ^
The further argument is presented “that the law of Pennsylvania does not require an employee to work in a dangerous position and if he does so with knowledge of the potential danger and continues to work without protest he assumes the risk.” We have no quarrel with this rule but deem it inapplicable to the facts of the present case. There was no proof that plaintiff knew of the potential danger.
Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 9-10, 130 A.2d 123, 128-129 (1957) (citations omitted) (emphasis supplied). See also: Janowicz v. Crucible Steel Company of America, 433 Pa. 304, 249 A.2d 773 (1969).
The majority does not fault the California Appeals Court for imposing liability upon an architect who failed to delineate on plans an underground high voltage line. Mallow v. Tucker, Sadler & Bennett, Architects & Engineers, Inc., 245 Cal. App.2d 700, 54 Cal.Rptr. 174 (1966). I am unable to detect a significantly intrinsic difference between the dangers to the work environment posed by that invisible line and the instant fine of blurred proximity and unknown danger.
The posture of the case is, as I see it:
The complaint asserts that the architect had a duty to provide appropriate warning as to the perilous power line. The architect delivered deposition testimony that even though he knew of the perilous power line, he expressed no warning.
Appellants, during discovery, provided testimony by an expert that the architect knew of the hazardous power line, knew that the design of the building compelled workers to work in precarious proximity to the lines, and failed “to take reasonable steps consistent with customary architectural practice to identify the hazardous condition in anticipation of workers being exposed.... ” (Emphasis supplied).
Since I am of the mind that the architect had a duty “to take reasonable steps consistent with customary architectural prac *495 tice to identify” the hazard so as to alert and thereby protect the worker, the architect is not, in my view, entitled to judgment as a matter of law. Thus it is that I would reverse the order granting summary judgment and permit appellants to proceed to the presentation of their claims to the jury.