## Bruch, Appellant, *v.* Shafer.

*Contract—Joint contract—Signature of parties—Failure to sign— Parol evidence.*

Where a joint contract in writing shows on its face that it is to be signed by two persons as parties of the first part, and one person as party of the second part, and one of the parties of the first part refuses to sign after the other two persons had signed, the instrument is ineffective, and all parties are discharged. If in such a case the party of the first part who had signed the agreement and who paid over money to the party of the second part, brings an action to recover said money, he may show by his own parol testimony that he was induced to advance his own money on the express promise of the defendant that if the written agreement should not become operative by reason of the

failure of the other party of the first part to sign it, the money should be refunded. Such a parol agreement is entirely outside and independent of the written agreement, and if believed by the jury is sufficient to sustain the plaintiff's claim, although it is contradicted by the defendant, and is not supported by the evidence of another witness.

Argued Dec. 6, 1910. Appeal, No. 24, Oct. T., 1910, by plaintiff, from judgment of C. P. Northampton Co., Sept. T., 1908, No. 53, on verdict for defendant in case of Grover Bruch v. Howard S. Shafer. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to enforce an agreement to refund money. Before SCOTT, P. J.

The facts are stated in the opinion of the Superior Court.

The court charged, inter alia, as follows:

But one of those questions that have been thus in dispute is a matter for my determination and not yours, and that is the point in dispute between these parties as to whether there was an express agreement that the money should be returned upon failure of the brother to sign the agreement. There can be no recovery upon the part of the plaintiff upon that ground under any testimony that has been submitted here. [1]

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* amongst others was portion of charge as above, quoting it.

*C. F. Smith,* of *Smith, Paff & Laub,* for appellant.— The agreement to refund the $1,300 because they were paid before the agreement provided is not antagonistic to the clause which provides that the $1,300 shall be paid at the time of the signing of the agreement: Steel v. Loeb, 5 Pa. Superior Ct. 238; Close v. Zell, 141 Pa. 390; Martin v. McCune, 8 Pa. Superior Ct. 84; Parcell v. Grosser, 109

Pa. 617; Nye v. Pittsburg Co., 2 Pa. Superior Ct. 384; Bartley v. Phillips, 165 Pa. 325.

If it is understood that a contract signed by two parties is also to be executed by a third party there is no contract until this is done: 9 Cyc. 282; Arnold v. Scharbauer et al., 116 Fed. Repr. 492; Finney v. Finney, 1 Pearson, 70; Centenary M. E. Church v. Clime, 116 Pa. 146; Martin v. Kline, 157 Pa. 473.

*Robert A. Stotz*, for appellee, cited: Brawdy v. Brawdy, 7 Pa. 157; Fuller v. Law, 207 Pa. 101; Phillips v. Meily, 106 Pa. 536; Columbia Ave. Trust Co. v. King, 227 Pa. 308.

OPINION BY HEAD, J., March 3, 1911:

The defendant was the owner of a bottling business with the necessary machinery and equipment to operate it. Negotiations were begun between him and the plaintiff looking to the purchase of this property by the latter and his brother, John Bruch, who resided in the city of Boston. Some correspondence had passed between the brothers, as a result of which John Bruch gave his assent to join in the proposition as he understood it. Upon what representations, if any, made by Shafer to the plaintiff and transmitted by him to his brother, the assent of the latter was secured, we need not here stop to inquire.

There is scarcely room for a doubt that it was contemplated and agreed by the plaintiff and defendant that when their negotiations had reached a basis of mutual understanding the agreement was to be committed to writing which was to be signed by the three parties who were to be bound by it. Accordingly such an instrument was drawn up by counsel selected for that purpose and a copy of this instrument was attached to the pleadings and is part of the record of the case. It declares in unmistakable terms, on its face, that it was to be signed and sealed not only by the plaintiff and defendant but by John Bruch as well. It recites that "Grover Bruch

and John Bruch have agreed to buy the said stock, etc."
It provided for a transfer of the license of the defendant
to the two individuals named. It obligated both of them
to execute and afterwards to pay certain notes evidencing
part of the consideration, and it particularly obligated
John Bruch individually "to assign two life insurance
policies of $1,000.00 each " as collateral security for the
payment of the said notes. A place was prepared for
his signature and seal. It is not pretended that the plain-
tiff ever entertained or manifested any intention of enter-
ing into this deal by and for himself. The mutual under-
standing of both the parties who were negotiating was that
there were to be three parties to the agreement. When
the paper was drawn up it was signed by the defendant,
then by the plaintiff, and turned over to the latter to
be forwarded by him to Boston for the signature of his
brother. The latter, having made some investigations
of his own, reached the conclusion that the value of the
property had been overestimated. He refused to sign
the paper, retained it in his own possession and thereafter
would have nothing further to do with the transaction.

Under these circumstances we are unable to escape the
conclusion that the agreement in writing contemplated
both by plaintiff and defendant was never fully executed.
In Finney v. Finney, 1 Pearson, 70, the legal principle
is well stated in the following language: "When a joint
instrument is drawn to be signed by several, and one
fails to sign, all are discharged. It is otherwise in the
case of a joint and several instrument, a security for an
antecedent debt, or when the parties signing knew that
fewer than the whole number were to sign." Again, in
9 Cyc. 282, it is thus stated: "If it is understood that a
contract signed by two parties is also to be executed by a
third party, there is no contract until this is done." What-
ever then were the rights and obligations of the several
parties at that time, they cannot be fairly said to have
been conclusively fixed by the terms of the written in- ·
strument which was never completely executed.

Now the agreement, as written, provided for the payment of $1,300 in cash when the instrument was signed. It is clear enough that this payment, by the very terms of the instrument, did not become due until the agreement was signed. The plaintiff's contention, however, is that the defendant was anxious to get this money immediately to enable him to use it in the purchase of an automobile. Whilst, of course, it was not expected that John Bruch would refuse to execute the agreement when it reached him at Boston, some days would necessarily elapse before it could be returned executed. The plaintiff alleges and testifies that the defendant urged him to advance this money out of his own funds without waiting for the completion of the contract. While not unwilling to accede to this request of the defendant, and thus anticipate the time of payment provided in the agreement, the defendant says that his then expressed willingness and the subsequent furnishing of the money by him were induced and brought about by a distinct collateral and independent promise of the defendant, thus stated in the plaintiff's testimony: "I asked Mr. Shafer, well now suppose this agreement is drawn up and my brother refuses to sign, I can't carry this thing alone. What about this money? And he distinctly told me in case my brother refused to sign, that money was to be returned to me."

Whether or not such a promise was made and became the inducing cause for the advancement of $1,300 by the plaintiff, were, of course, questions of fact to be determined by the jury after a proper submission of them by the court. If such parol contract were made, it was entirely outside and independent of the written agreement. It could not be of course said that it was omitted from the agreement by fraud, accident or mistake, because it was no part of it. It was not intended to be. It was a wholly collateral arrangement, between the plaintiff and defendant only, without any reference to the parties to the written contract.

There was nothing in the nature of this contract, if it

were made, to require it to be in writing. It was in no way contradictory of the terms of the written agreement because it would have been fully completed and its purpose served at the moment the latter was fully signed. The testimony of the plaintiff himself, if credited by the jury, was therefore entirely competent to support a finding that such contract had been made; and if it were, the plaintiff had a cause of action against the defendant wholly apart from anything contained in the partially executed written contract. We think the learned trial judge fell into error therefore in regarding the case of the plaintiff as one seeking to alter or contradict the terms of a written agreement duly executed by the parties to it, and in determining as matter of law that the testimony of the plaintiff was insufficient in law to establish the promise on which he rested his claim.

It is argued that the whole subject-matter of the negotiations between the defendant and the plaintiff was personal property, and therefore the law did not require their agreement to be put in writing. This we may concede, but we are not concerned with what the parties legally could have done. Their rights and duties are to be measured rather by what they clearly agreed to do and undertook to perform. They agreed that there was to be a contract in writing; they agreed it was to be signed by the three parties to be bound by it; and it did not become an executed contract in writing until the signatures of all the parties were attached thereto, or until each one had so asssented to it that the law would regard his act as equivalent to his signature.

It is also urged upon us that the correspondence by letter and telegram between the two brothers warranted the conclusion that the present plaintiff was fully empowered to act for both. It is clear, however, that the plaintiff did not pretend to have authority to sign and seal for his brother the agreement in writing which was drawn up. He did not undertake to execute it for anyone but himself, and we can find nothing in the testimony

which would warrant the conclusion that the defendant contemplated anything else than that the paper was to be sent to Boston, as it was, to be actually signed by John Bruch. We are unable to find, therefore, in this unexecuted written instrument any warranty for the conclusion that it operated as a bar to the present action of the plaintiff, if the jury should accept as true his version of the manner in which he was induced to part with his money.

Of course it does not follow from anything we have said that the plaintiff's version of the manner in which he parted with his money was necessarily the true one. The defendant insists that no such arrangement or promise was in fact made. That he and the plaintiff regarded the contract as executed, at least for all practical purposes; that the money that was paid was not in anticipation of the cash payment called for, but was in fact that payment, made in pursuance and performance of the contract; and that the plaintiff could recover it only by justifying a recission of a written contract thus far executed. There is considerable confusion in the record owing to the fact that distinct issues, instead of being regarded as separate and alternative lines of attack or defense, were treated as interchangeable at pleasure. For much of this the plaintiff is responsible because his statement of claim and his testimony throughout exhibit lack of clearness of thought and precision in statement as to the foundation of his claim and thus the duties of the learned trial judge were made unnecessarily complicated and difficult.

But through the entire record there runs the continuous thread of the plaintiff's claim that before the written contract was executed by all of the parties to be bound by it, he was induced to advance $1,300 of his own money on the expressed promise of the defendant that if the written agreement should not become operative, by reason of the failure of one of the parties to sign it, the money should be refunded and the status quo ante of the parties restored. On the issue of fact thus tendered he was entitled to be heard by the jury.

The third, fourth and fifth assignments of error relate to the instructions contained in the general charge on the subject of the alleged mispresentations of the defendant as to the nature and extent of his business. In these instructions we find no error. The first assignment, however, for the reasons we have indicated, must be sustained.

Judgment reversed and a venire facias de novo awarded.