401 A.2d 821

**Dennis B. STEPHENS and Helen M. Stephens, his wife**

v.

**Robert M. CARRARA and Hedwig F. Carrara, his wife, Appellants.**

Superior Court of Pennsylvania.

Submitted April 10, 1978.

Decided April 12, 1979.

George E. James, Beaver Falls, for appellants.

James A. McGregor, Jr., Beaver, and with him Robert F. Palmquist, Beaver, for appellees.

Before JACOBS, President Judge and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

VAN der VOORT, Judge:

The plaintiffs-appellees instituted the instant action to recover damages for an asserted breach of a written contract by defendants-appellants, which agreement concerned the sale of realty owned by plaintiffs-appellees. Trial was held in the lower court before a judge and jury, but at the conclusion of the presentation of all evidence, the trial judge directed a verdict for plaintiffs in the amount of $3,877.78. After the denial of defendants' motion for new trial or for judgment n. o. v., this appeal followed. While the verdict and the judgment in this case were against the husband appellant alone (for reasons which will be more fully explained herein), both Mr. and Mrs. Carrara are noted as having entered this appeal from the result reached in the lower court.

The facts of the underlying dispute are relatively simple. Plaintiffs-Appellees Dennis B. and Helen M. Stephens, husband and wife, desired to sell their home. The Defendants-Appellants, Robert M. and Hedwig Carrara, husband and wife, responded to the Stephens' newspaper advertisement and visited the home. After several visits and discussions, the Stephens and Mr. Carrara reached an oral agreement for the sale of the home. The Stephens had their attorney prepare a sales agreement and eventually they signed it as

did Mr. Carrara, who also tendered a payment of $500.00 towards the agreed purchase price of $36,000.00, in accordance with the agreement. Mrs. Carrara never signed the sales agreement. Shortly before the scheduled closing date for the property, Mr. Carrara announced that his wife did not like the Stephens' home, that he was obtaining another home, and that he therefore did not intend to complete the purchase. He did not thereafter attend the closing or otherwise complete the deal, and the Stephens eventually sold to another purchaser for less than the amount that Mr. Carrara had agreed to pay. This action followed.

Several claims are raised on this appeal. One allegation of error which we find meritorious is the argument that the lower court erred in directing a verdict for the plaintiffs under all of the facts presented.

In our Commonwealth, it has long been held that only in a case where the facts are all clear, and there is no room for doubt, should the case be removed from the jury's consideration, and a motion for directed verdict or binding instructions be granted. *Cox v. Equitable Gas Co.*, 227 Pa.Super. 153, 324 A.2d 516 (1974). Thus, before granting a directed verdict, the court must accept as true all facts and proper inferences from testimony which tend to support the contentions of the party against whom the motion has been made, and further, must reject all testimony and inferences to the contrary. *Livzzo v. McKay*, 396 Pa. 183, 152 A.2d 265 (1959); *Continental Supermarket Food Service, Inc. v. Soboski*, 210 Pa.Super. 304, 323 A.2d 216 (1967). We find that the facts were not so clear as to justify a directed verdict in the instant case.

The defense maintained that the real estate sales agreement should have been declared a nullity because Mrs. Carrara never signed it. It was theorized that the agreement, since it referred to four parties, including Mrs. Carrara, was incomplete and merely executory without her signature, and therefore not enforceable. Our review of the record reveals some possible support for that position. First, the agreement itself lists Mrs. Carrara as a party and has a line on which she was to affix her signature. Also, in

several places, it uses the term "purchasers" in setting forth the rights and liabilities of the parties.[1] While there is an absence of testimony by either Mr. or Mrs. Carrara to the effect that it was agreed by all parties that the contract would be a nullity if Mrs. Carrara did not sign it, there was some other testimony which might have created an *inference* of such an understanding. For instance, the record shows the following questions and answers in the cross examination of Mr. Stephens:

"Q: Okay. So according to the written terms of that agreement, there were supposed to be two persons as parties of the first part, namely, you and your wife, is that correct?

A: That's what we understood.

Q: And you also understood there was supposed to be two parties of the second part, namely, Mr. and Mrs. Carrara, is that correct?

A: That's what we were led to believe, yes."

. . . . .

"Q: How many lines are provided for people to sign at the end of the agreement, not as witnesses, but as parties?

A: Four.

Q: And what appears on that fourth line?

A: Nothing.

Q: That's the line Mrs. Carrara was supposed to sign, right?

A: That's where she was supposed to sign."

. . . . .

"A: Well, she was supposed to sign, and we were under the understanding that she was going to sign."

We believe that these questions and answers, together with the ambiguities evident in the sales agreement, created an inference supporting the defense argument that the agreement was executory and a nullity without Mrs. Carrara's signature.

1. The agreement, at places, also used the singular term "purchaser", as well as the term "seller".

■ Strangely, there is a paucity of cases, recent or otherwise, in our Commonwealth to explain the applicable principles of contract law applicable in the instant case. The appellants cite the case of *Bruch v. Shafer*, 45 Pa.Super. 612 (1911)[2] to support the argument that a written agreement is a nullity and not enforceable unless signed by all parties referred to in the instrument. We cannot agree that *Bruch v. Shafer* so holds, as the action in that case was based upon an oral agreement for refund of an advance payment of a related written agreement for the purchase of a business was not signed by all parties. It does not appear that there was any dispute in that case that the written agreement itself was understood by the parties to be effective only if all parties signed. While some of the dictum in *Bruch v. Shafer, supra*, may seem supportive of the appellants' position that *any* contract is not enforceable unless all parties sign it, that clearly has not been the law in our Commonwealth. We need only point out that even a contract for the sale of lands, subject to our Statute of Frauds (Act of March 21, 1772, 1 Sm.L. 389, § 1, 33 P.S. § 1), need only be signed by the vendors to comply with the Statute of Frauds, and may in that form, with all other circumstances being appropriate therefore, be enforceable in an action against the vendees. See *Stevenson v. Titus*, 332 Pa. 100, 2 A.2d 853 (1939).

■ Our review has failed to disclose any appellate decision in our Commonwealth which discusses the analysis to be applied in resolving precisely the issue presented in this case. One lower court decision, in the case of *Lavold Agency v. Andrews*, 35 North. 216 (1959), which discusses the views of courts in other jurisdictions, announces principles which we believe are applicable herein. It is stated there that where it plainly appears that it was the intention of those who sign not to be bound until or unless the other

2. After a remand and retrial in the case, a later appeal in the case may be found at 235 Pa. 590, 84 A. 515 (1912), where the Supreme Court affirmed on the reasoning set forth in the above cited Superior Court decision.

parties named also sign, the instrument will not be binding upon the signers. Where, however, there is an absence of evidence of an intention on the part of signers not to be bound unless all the other named parties also sign, those who sign bind themselves. Thus, where the written agreement contains the names of certain persons as parties, and one or more do not sign while others do, the question of whether those who sign are bound is to be determined by the intention and understanding of the parties at the time of the execution of the agreement. This analysis is the prevailing one in other jurisdictions. See 17 Am.Jur.2d, Contracts, § 70, et seq. and the cases collected therein.

█ Our action in reversing is not to be construed as either a negative reaction to the strength of the plaintiffs' claims nor as an endorsement of the contentions raised at trial by the defense. We merely find that sufficient inferences of a possible defense were raised in the evidence such as to make the direction of a verdict improper under all of the circumstances present in this case.

Reversed and remanded for new trial.

CERCONE, President Judge, concurs in the result.

JACOBS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision in this case.