## Dalinsky v. Hasiuk

C.P. of Bucks County, no. 1999-07/7.

*Richard Seidel,* for plaintiff.
*Joan Orsini Ford,* for defendant.

MELLON, *J.,* April 14, 2005—Plaintiff Michelle Dalinsky appeals the jury verdict in favor of defendant, Aaron Hasiuk M.D., on November 23, 2004. The jury determined that Dr. Hasiuk was not negligent and did obtain Dalinsky's informed consent before he scheduled an induced vaginal delivery of Dalinsky's third child.

## FACTUAL AND PROCEDURAL HISTORY

Many of the facts in this case are undisputed. Both Dalinsky and Dr. Hasiuk essentially agree to the following: Dalinsky had been a patient of Dr. Hasiuk's, a licensed obstetrician and gynecologist, for approximately nine years. During the nine years prior to this incident, Dr. Hasiuk delivered Dalinsky's first two children. The first delivery was in 1988. Dalinsky was in labor for approximately 17 hours, and, to accomplish the vaginal delivery, Dr. Hasiuk had to perform a second-degree episiotomy in the midline[1] and employ a vacuum extractor.[2] A known complication with a second-degree episiotomy is a tear of the vagina that extends downward into a fourth-degree episiotomy. Said delivery was successful, but the second-degree episiotomy performed on Dalinsky did in fact extend into a fourth-degree tear.

Dalinsky became pregnant for a second time in 1994 and once more Dr. Hasiuk was her obstetrician. Having already undergone a vaginal delivery with episiotomy, Dalinsky was at an increased risk for complication and need for a second episiotomy if she chose a vaginal de-

---

1. An episiotomy is a surgical enlargement of the vaginal opening for obstetrical purposes. It enlarges the opening of the vagina, thereby providing a larger area through which the baby can pass during birth. A midline episiotomy occurs when the incision made goes in a straight line from the innermost lining of the vagina down towards the rectum. Episiotomies vary in degree, a first-degree being the smallest incision and a fourth-degree being a tear or incision from the innermost wall of the vagina down to the rectum.

2. A vacuum extractor is a suction device that is placed on the baby's head while the mother is having a contraction. The extractor is then gently pulled on by a doctor to help bring the baby down the birth canal.

livery for the second child. Aware of this risk, Dalinsky elected to forego a caesarian section and have a second vaginal delivery. Again she was in labor for approximately 17 hours. Dr. Hasiuk successfully performed the second vaginal delivery, although it required that he cut a mediolateral episiotomy and employ forceps.[3]

The disputed facts from which this case was brought are as follows: Dr. Hasiuk recorded in his chart that he would perform a caesarian section rather than another vaginal delivery if Dalinsky became pregnant for a third time. He explained that he would rather perform a caesarian delivery because of the difficulties Dalinsky experienced with her previous two deliveries. In April 1997, Dalinsky became pregnant and was again under the care of Dr. Hasiuk. During a prenatal visit Dr. Hasiuk explained to Dalinsky the increased risk for another episiotomy during a third vaginal delivery due to the two prior episiotomies. Further, Dr. Hasiuk explained the risk associated with birth by caesarian section. Dalinsky elected to have Dr. Hasiuk schedule an induced vaginal delivery for November 20, 1997.[4]

On that date Dalinsky arrived at the hospital with her husband at approximately 7:20 a.m. to proceed with the induction and delivery.[5] Dr. Hasiuk did not arrive until 4 that afternoon, at which point induction had already begun under Dr. Hasiuk's associate, Dr. Smith.[6] When Dr.

---

3. A mediolateral episiotomy cuts at an angle from the middle of the vagina towards the left or right as opposed to the midline episiotomy which is a straight cut down towards the rectum.

4. *Id.*

5. See N.T. 11/17/04 pp. 139-41.

6. *Id.*

Hasiuk arrived at the hospital he met with Dalinsky and her husband. Dr. Hasiuk testified he would not have scheduled the induction or induced delivery without having first discussed all risks with Dalinsky.[7]

After numerous hours of labor, Dalinsky's third child was birthed on November 21, 1997. To facilitate the delivery, Dr. Hasiuk was required to perform a medio-lateral episiotomy of at least the second-degree.[8] Unfortunately this procedure caused severe damage to Dalinsky's rectum and vagina, and she was left with total fecal incontinence. Subsequent attempts to repair the damaged rectum were unsuccessful and further created scar tissue within Dalinsky's vagina that makes sexual intercourse extremely painful. It is apparent that Dalinsky will suffer from permanent fecal incontinence as a result of the damage caused from multiple episiotomies.

Dalinsky brought this suit alleging that Dr. Hasiuk was negligent, failed to properly inform her of pertinent information regarding her medical condition, ignored her medical history and failed to get proper consent before performing a vaginal birth of Dalinsky's third child, thereby causing the aforementioned defects.

## MATTER COMPLAINED OF

On March 15, 2005, pursuant to Bucks County Rule of Civil Procedure 287, Dalinsky filed with this court

---

7. See N.T. 11/17/04 pp. 85-86.

8. The personal records of Dr. Hasiuk indicate that it was a fourth-degree incision while the hospital records indicate it was only a second-degree incision. See N.T. 11/18/04 pp. 64-66.

her concise statement of matters complained of on appeal. Each matter shall subsequently be examined on an individual basis, although, before reciting Dalinsky's matters complained of verbatim, the court wishes to note the following: (a) matters no. 1 and 2 shall be addressed together as both allege the same error, that the court should have granted a directed verdict in favor of Dalinsky; (b) matters no. 3-10 are statements of Dalinsky's opinion of the evidence presented. The court believes that Dalinsky is attempting to aver that the court erred in failing to enter a judgment n.o.v., and that shall be the issue addressed by the court; and (c) matter no. 11 is, in the court's opinion, an attempt to allege an error by the court in its failure to grant a new trial. Therefore it is that issue that shall be addressed.

The matters complained of as submitted by Dalinsky are as follows:

(1) The court erred by denying plaintiff's motion for directed verdict on the issue of informed consent.

(2) The court improperly permitted the jury to decide an issue that the law required a verdict in favor of the plaintiff.

(3) A judgment n.o.v. can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law, or (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant.

(4) The defendant admitted that he did not obtain a specific consent form from the plaintiff and that he failed to discuss the increased risks involved in performing a third episiotomy on the plaintiff.

(5) The court ruled that the defendant was required to obtain the specific consent of the plaintiff after informing her of the increased risks of the procedure.

(6) The defendant testified that he did not need to get the plaintiff's informed consent because the episiotomy is covered under the general delivery consent form.

(7) The court determined that the defendant was required to obtain the specific consent from the plaintiff in order to perform an episiotomy.

(8) Therefore, since the court ruled that the defendant was wrong as a matter of law, no two reasonable minds could disagree that the verdict should have been rendered for the plaintiff on the issue of informed consent.

(9) Both the defendant and his expert, Dr. Gerson, agreed that the defendant deviated from the standard of care in the treatment and care that the defendant rendered to the plaintiff.

(10) Therefore, since there was no factual dispute over the negligence theory, no two reasonable minds could disagree that the verdict should have been rendered for the plaintiff.

(11) The verdict of the jury on the issues of informed consent and negligence is so contrary to the evidence that it shocks one's sense of justice.

(12) The jury never considered the issues of causation or damages.

(13) The above-mentioned errors by the trial court resulted in the jury's verdict in favor of defendant, rendered on March 7, 2005.

## DISCUSSION

### *The Trial Court Did Not Err When It Failed To Grant Plaintiff's Request for a Directed Verdict on the Issue of Informed Consent*

It is established in Pennsylvania that "only in a case where the facts are all clear, and there is no room for doubt, should [a] case be removed from the jury's consideration, and a motion for a directed verdict . . . be granted." [9] In reaching a determination of whether or not the directed verdict should be granted, the court must "accept as true all facts and proper inferences which tend to support the contention of the party against whom the motion has been made and must reject all testimony and inferences to the contrary." [10]

In this case Dalinsky alleges that a directed verdict should have been entered because no evidence was presented that indicates Dr. Hasiuk received Dalinsky's informed consent prior to the vaginal delivery of November 21, 1997. The court contends that this assertion is incorrect.

In examining the court's contention on this issue, it must first be made clear what constitutes and defines "informed consent." In Pennsylvania, consent is informed "if the patient has been given a description of a procedure . . . and the risks and alternatives that a reasonably prudent patient would require to make an informed deci-

---

9. See *Stephens v. Carrara*, 265 Pa. Super. 102, 105, 401 A.2d 821, 822 (1979).

10. See *Cox v. Equitable Gas Co.,* 227 Pa. Super. 153, 155, 324 A.2d 516, 518 (1974).

sion as to that procedure."[11] During trial the court was presented with the question of whether a vaginal delivery with episiotomy requires informed consent. This court ruled that, as a general rule, an obstetrician *does not* have to obtain a patient's informed consent prior to performing a vaginal delivery and episiotomy.

However, this case is different from the normal circumstances in which a vaginal delivery and episiotomy would be performed. In this case, Dr. Hasiuk specifically planned to do a caesarian section if Dalinsky became pregnant with her third child. This was intended to avoid the known risks associated with multiple episiotomies. Given the evidence presented that indicates Dr. Hasiuk had initially intended to perform a caesarian section on Dalinsky, the court ruled that the unique circumstances of this case made it necessary for Dr. Hasiuk to prove he did in fact have informed consent to perform a vaginal delivery with episiotomy to birth Dalinsky's third child.

Having determined that Dr. Hasiuk was required to obtain informed consent, it is necessary to examine the evidence presented at trial to determine if the court properly denied a directed verdict. Dr. Hasiuk testified as follows in regard to conversations he had with Dalinsky:

"Dr. Hasiuk: At the time I scheduled Michelle's induction [for the birth of Dalinsky's third child] on November 6, I had a discussion with her about the induction.

"Plaintiff counsel: Sir, you have absolutely no specific recollection—at least it is true that you've testified

_____

11. See 40 P.S. §1303.504.

previously you have no recollection of any meeting that took place on the 11th, but, rather, you assumed that a conversation took place because you scheduled her for an induction? Isn't that your prior testimony, sir?

"Dr. Hasiuk: I'm not sure if that is my prior testimony.

"Plaintiff counsel: Is that true?

"The Court: Is what true?

"Plaintiff counsel: Is it true that you have no recollection of any conversation, and, in fact, the only reason that you believe you had a conversation with Ms. [Dalinsky] is because you scheduled the induction, and you wouldn't have scheduled an induction without having a conversation with her?

"Dr. Hasiuk: That's correct, I wouldn't have scheduled—

"Plaintiff counsel: That's correct?

"The Court: Excuse me, answer the question, then explain, doctor.

"Dr. Hasiuk: I would not have scheduled the induction with [Dalinsky] without explaining to her about the induction." [12]

Dr. Hasiuk further testified that he and Dalinsky had a discussion on November 6, 1997, in which they discussed that she was going to have a scheduled induction for vaginal delivery on November 13 because "the plan had changed." [13] Further, Dr. Hasiuk had a conversation with Dalinsky after he arrived at the hospital and before vagi-

___

12. See N.T. 11/17/04 pp. 85-86.
13. See N.T. 11/17/04 p. 134.

nal induction was performed on November 20, 1997, about what was going to occur.[14]

Given this evidence alone, it is clear that a question exists as to whether or not the conversations between Dr. Hasiuk and Dalinsky prior to the birth of Dalinsky's third child constituted informed consent by Dalinsky, and therefore it was proper for the court to deny Dalinsky's motion for directed verdict. Further, it should be noted that the determination of whether said conversations between Dalinsky and Dr. Hasiuk constituted informed consent is not one that should have been made by the court; rather that decision was properly placed in the hands of the jury.

### The Court Did Not Improperly Permit the Jury To Decide an Issue That the Law Required To Be a Verdict for Plaintiff

In addressing this contention it should first be noted that number two of Dalinsky's matters complained of is overly concise since it fails to state exactly what "issue" was allegedly improperly decided by the jury.

If the court goes so far as to assume that the alleged "issue" is the court's decision to allow the jury to decide whether Dr. Hasiuk had informed consent from Dalinsky instead of granting a directed verdict on the matter, it is the court's contention that such an allegation is without merit for the reasons examined in detail *supra.*

---

14. See N.T. 11/19/04 p. 91.

*It Is Possible That Two Reasonable Minds Could Disagree That the Verdict Should Have Been Rendered for the Plaintiff*

Dalinsky's concise matters complained of are improperly drafted; however, it is reasonable for the court to infer that numbers three to 10 of their matters complained of are Dalinsky's attempt to allege that the court erred by failing to enter a judgment n.o.v. This contention by Dalinsky is incorrect.

Case law and the Supreme Court of Pennsylvania have clearly stated that granting a judgment n.o.v. is only proper when: (1) movant is entitled to judgment as a matter of law; or (2) there is no sufficient, competent evidence to support the verdict and no two reasonable minds could disagree that the moving party is entitled to relief when viewing the evidence in a light most favorable to the verdict winner.[15]

With regard to the first standard, *i.e.,* that Dalinsky is entitled to judgment as a matter of law, it is the court's contention that the reasons for which Dalinsky was not entitled to judgment as a matter of law were explained in detail *supra* and therefore will not be re-examined.

In regard to Dalinsky's contention that no two reasonable minds could disagree that a verdict should have been entered in favor of Dalinsky, this court finds such a contention to be without merit. As explained previously, there was evidence presented by Dr. Hasiuk that conversations took place between he and Dalinsky during which he alleges to have informed Dalinsky of what the differ-

---

15. See *Janis v. AMP Inc.,* 856 A.2d 140 (Pa. Super. 2004).

ences between a caesarian section and vaginal birth would entail. He further presented evidence that indicated he would not have proceeded with a vaginal delivery of Dalinsky's third child without first getting informed consent from Dalinsky. In addition, it is indisputable that Dalinsky consciously underwent a vaginal birth of her third child, thereby making her claim that she unswervingly believed she was having a caesarian section less credible.

The aforementioned evidence is clearly enough to prove that reasonable minds could disagree as to whether Dr. Hasiuk properly procured informed consent from Dalinsky prior to inducing labor on November 21, 1997. Based on the evidence presented, the jurors made factual determinations, as was their function.

Additionally, the court wishes to address the factual statement made by Dalinsky in number nine of her matters complained of, specifically the assertion that Dr. Hasiuk's expert, Dr. Andrew G. Gerson, agreed "that [Dr. Hasiuk] deviated from the standard of care in the treatment and care that [Dr. Hasiuk] rendered to [Dalinsky]." The court finds such a statement to be entirely untrue.

In regard to the standard of care for Dalinsky, Dr. Gerson testified as follows:

"Defense counsel: Doctor, if a patient has two fourth-degree episiotomies that are repaired, what is the standard of care as to how a subsequent delivery should be conducted and what was the standard of care in 1997?

"Dr. Gerson: The standard of care for a patient who had had two episiotomies that had extended into a fourth-degree tear was one of individualization. And that means

evaluating the patient for how the patient had healed, the presence or absence of any symptoms related to having had fourth-degree extensions of a midline episiotomy, as well as doing some evaluation of the size of the particular baby. There was a judgment where you put together the patient's recovery, the appearance of physical examination of the tissues between the vagina and rectum, the perineal body, the perineal area, as well as some idea or getting some sense about the size of the baby that may impact on your plan of delivery.

"Defense counsel: And was vaginal delivery a safe alternative for this patient in November of 1997?

"Dr. Gerson: Absolutely." [16]

Additionally, Dr. Gerson testified that there was "not any contraindication" to vaginal delivery of Dalinsky's third child in 1997.[17]

The aforementioned testimony by Dr. Gerson completely contradicts Dalinsky's assertion that Dr. Gerson and Dalinsky's expert agreed that Dr. Hasiuk deviated from the standard of care in his methods of preparing to deliver and actually delivering Dalinsky's third child. It is for that reason that such a contention has no merit.

*The Verdict of the Jury on the Issues of Informed Consent and Negligence Are Not So Contrary to the Evidence That It Shocks One's Sense of Justice*

Dalinsky alleges, by stating the standard under which a new trial is granted, that the court effectively erred by

---

16. See "Videotape deposition of Andrew G. Gerson M.D." trial exhibit D-10, pp. 60-62.

17. *Id.* at 55, 56.

failing to grant a new trial. This contention is without merit.

Common law has established that the weight of evidence is strictly within the province of the fact-finder, "who is free to believe all, part, or none of the evidence" presented and determine the credibility of a witness.[18] It is also established that once the fact-finder has reached its determination, a new trial is warranted only where a "jury's verdict is so contrary to the evidence that it shocks one's sense of justice."[19] An appellant is not entitled to a new trial "where . . . evidence is conflicting and the finder of fact could have decided either way."[20]

As previously examined, there was sufficient evidence presented by both sides to determine Dr. Hasiuk either was or was not negligent and that he did or did not have informed consent prior to facilitating the birth of Victoria. It is for the jury to resolve the conflicting testimony and the court cannot substitute its judgment for that of the jury. The testimony and evidence was sufficient to prove Dr. Hasiuk was not negligent and did act with informed consent, and such a conclusion is exactly what the jury found. By no means does the jury's verdict meet the standard of "shocking one's sense of justice."

---

18. See *Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403, 408 (2003).

19. See *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458, 461 (1998).

20. See *Odato v. Fullen,* 848 A.2d 964, 966 (Pa. Super. 2004).

*The Court Cannot Insist That the Jury Consider
the Issues of Causation and Damages
When It Has Already Found That No
Negligent Actions Were Taken*

In number 12 of her matters complained of, Dalinsky states factually that "the jury never considered the issues of causation or damages." Dalinsky is admittedly correct in this proposition. However, it is beyond the court's understanding of why, or upon what basis, the jury's failure to consider these issues can now be a matter upon which Dalinsky appeals. It stands to reason that the jury did not examine the issues of causation or damages since they found that Dr. Hasiuk was not negligent and did have informed consent from Dalinsky prior to beginning a vaginal delivery of Victoria. Such a finding made the issues of causation and damages moot and irrelevant, and therefore the jury never took them into consideration.

## CONCLUSION

It is for all of the above reasons that this court denied Dalinsky's request for a directed verdict and judgment n.o.v. and failed to grant Dalinsky's request for a new trial.